**LEONARDMEYER LLP**
Derek J. Meyer (State Bar No. 278346)
1800 Century Park East, Suite 1400
Los Angeles, CA 90067
Tel: (310) 220-0331
rmeyer@leonardmeyerllp.com

**LEONARDMEYER LLP**
John G. Bisbikis (*pro hac vice* application forthcoming)
Madelaine M. Thomas (*pro hac vice* application forthcoming*)*
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312) 374-8084
jbisbikis@leonardmeyerllp.com
mthomas@leonardmeyerllp.com

*Attorneys for Plaintiff Nanografix Corporation*

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| NANOGRAFIX CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>POLLARD BANKNOTE LIMITED, a Canadian corporation,<br><br>Defendant. | Case No. 2:18-cv-06735<br><br>**COMPLAINT**<br><br>1. PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, NANOGRAFIX CORPORATION ("Nanografix"), states as follows for its Complaint against Defendant, POLLARD BANKNOTE LIMITED ("Pollard"):

**OVERVIEW OF THE ACTION**

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code § 1 *et seq*. This Court has exclusive jurisdiction over the subject matter of the Complaint for Patent Infringement under 28 U.S.C. §§ 1331 and 1338(a).

2. Nanografix provides security hologram products for use by manufacturers, retailers, pharmaceutical companies, corporations, and Governments. Nanografix's hologram products help its customers prevent counterfeits and protect brand identity.

3. Nanografix owns U.S. Patent No. 6,443,494 entitled "Removable Optical Security Film Placed on Printed Surfaces and/or Products Containing Such Film."

4. Nanografix's patent relates to an optical security article that has a substrate with printed information and an optical security coating adhered to the substrate over the printed information.

5. The optical security coating contains engraved optical elements which cannot be readily duplicated. The optical security coating has adhesive characteristics whereby it is temporarily adhered to the substrate to resist accidental removal or peeling off, while permitting the coating to be intentionally scratched or scraped off to reveal the underlying information.

6. Pollard makes, uses, sells and offers for sale, instant-win scratch lottery tickets that infringe Nanografix's patent to various state lotteries in the United States.

**THE PARTIES**

7. Plaintiff, Nanografix Corporation, is a California corporation with its principal place of business at 3830 Valley Centre Drive, Suite 705, San Diego, CA 92130.

8. Defendant, Pollard Banknote Limited, is a Canadian corporation, organized and existing under the laws of the Province of Manitoba, Canada and has a principal place of business at 140 Otter Street, Winnipeg, Manitoba R3T 0M8, Canada.

**THE NANOGRAFIX PATENT-IN-SUIT**

9. On September 3, 2002, United States Patent No. 6,443,494 B1, entitled "Removable Optical Security Film Placed on Printed Surfaces and/or Products Containing Such Film" (hereafter, "the '494 Patent") was duly and legally issued by the United States Patent and Trademark Office. A copy of the '494 Patent is attached as Exhibit A.

10. Nanografix is the owner of all right, title and interest in the '494 Patent.

11. According to the '494 Patent's Summary of the Invention "an optical security article is provided, which comprises a substrate carrying printed information and an optical security coating removably applied over the information on the substrate." (Ex. A, '494 Patent at col. 1, lines 53-57).

12. The optical security coating has "engraved optical elements and [] an adhesive component for adhesively securing the coating to the substrate." (*Id.*, at col. 1, lines 57-59). The adhesive component has "a predetermined adherence strength for resisting accidental removal of the

coating from the substrate by frictional forces" and permits "complete removal of the coating from the substrate by scratching or scraping it off the substrate without damaging or altering the printed information on the substrate." (*Id.*, at col. 1, lines 59-65).

13. The type of information protected by the removable optical security coating can be "activation codes, prizes, lottery numbers, codes, logos, photographs, numbers, and the like" and can be "contained in printed documents such as calling cards, instant lottery tickets, promotions, licenses, collectible cards, event tickets, and similar documents." (*Id.*, at col. 3, lines 31-37).

14. In one aspect of the optical security article disclosed in the '494 Patent, the optical security coating has engraved optical elements that "may be engraved microscopically on a coating." (*Id.*, at col. 3, lines 16-17).

15. As described in the '494 Patent:

> Generally speaking, this invention's removable optical coating includes both the temporary application of a removable material with adhesive characteristics on the substrate to which it is applied, and the engraving of optical elements onto the removable material.

(*Id.*, at col. 3, lines 38-42).

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Pollard because it has purposefully directed infringing activities at the forum. Nanografix's claim arises out of or relates to those infringing activities and the assertion of personal jurisdiction over Pollard is reasonable and fair.

17. Pollard has reportedly done business with the California Lottery since 1997.

18. On or about February 28, 2013, California issued a Request for Proposal #0616 for Scratchers® Products and Related Services ("2013 RFP").

19. The 2013 RFP was targeted toward bidders who are legal business entities and legally qualified to do business in California.

20. On information and belief, Pollard submitted a bid to the California Lottery in response to the 2013 RFP and is legally qualified to do business in California.

21. Based on records provided by the State of California, the California Lottery awarded Pollard a contract for the production of California Lottery Scratchers® games (*i.e.*, instant-win scratch

lottery tickets) on a about November 18, 2013 ("Lottery Contract"). A true and correct copy of the Lottery Contract is attached as Exhibit B.

22. The initial term of the Lottery Contract is from December 1, 2013 through November 30, 2019.

23. Pollard agreed in the Lottery Contract "to provide all services requested by the California Lottery for the production of Scratchers® games and related services" in accordance with the exhibits and price sheet attached to the Lottery Contract.

24. The price sheet for the Lottery Contract is called "Attachment 1" to the Lottery Contract. In the price sheet, Pollard offers for sale to the California Lottery various "Scratch FX" products that infringe the Nanografix patent. Such an offer for sale of infringing products to the California Lottery violates 35 U.S.C. § 271(a). Nanografix's claim of infringement arises out of or relates to Pollard's offer for sale of infringing products to the California Lottery (as further memorialized in a binding contract), as well as to Pollard's offer for sale and sale of infringing products to other lotteries.

25. Pollard has also availed itself of the laws of California in connection with its infringing activities as set forth herein. Section 2.2 of the Lottery Contract provides that the Lottery Contract is governed by California law.

26. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

## FACTUAL SUMMARY

### The Accused Pollard Instant Cards

27. Pollard makes, uses, sells and offers for sale, and has made, used, sold and offered for sale, instant-win scratch lottery tickets that have a holographic foil stamp pattern applied to specific areas of the tickets ("Accused Tickets"). Pollard sells Accused Tickets under the trademark "Scratch FX."

28. On its website, Pollard states that "[t]o date, 28 lotteries worldwide have launched a total of 171 Scratch FX® offerings" and that "[f]irst game Scratch FX® launches have sold 32% higher than average games at the same price point." (*See*, Exhibit C).

29. The Price Sheet from the Lottery Contract shows Pollard's offer for sale of infringing "Scratch FX" lottery tickets to the California Lottery. (*See*, Exhibit B, p. 81).

30. Another example of an Accused Ticket is one made and sold by Pollard to the State of Michigan called the "Max Money" ticket, which is also marketed under Pollard's "Scratch FX" trademark. A copy of a "Max Money" ticket (with barcode and serial number information redacted) and information available on the Michigan Lottery website about "Max Money" tickets are attached as Exhibit D.

31. The Michigan Lottery sells "Max Money" tickets to lottery players for $30 each. Prizes for the game range from $60 to $4,000,000.

32. According to the instructions on the "Max Money" ticket, purchasers of the "Max Money" tickets are instructed to play as follows:

> Match any of Your Numbers to any of the Winning Numbers, win prize shown below that number. Get a "2X", win 2 TIMES that prize. Get a "5X", win 5 TIMES that prize. Get a "10X", win 10 TIMES that prize. Get a "20X", win 20 TIMES that prize. Get a "50X", win 50 TIMES that prize. Get a "200X", win 200 TIMES that prize.

(*See*, Exhibit D, p. 1).

33. The "Max Money" tickets have a substrate carrying printed information. The printed information includes numbers and prizes.

34. The "Max Money" tickets have an optical security coating removably applied over the information on the substrate. The optical security coating carries engraved optical elements. The engraved optical elements form dollar symbols, money bands and the word "prize" on the tickets and cover the printed winning numbers, player numbers and prizes on the tickets, respectively.

35. The optical security coating on the "Max Money" tickets is opaque and hides the information printed on the substrate until it is intentionally removed by scratching or scraping.

36. The "Max Money" tickets have an adhesive that secures the optical security coating to the substrate. The adhesive is resistant to accidental removing of the coating from the substrate and permits complete removal of the coating from the substrate.

37. Pollard also sells its "Scratch FX" products that infringe the '494 Patent to other lotteries.

38. Pollard emphasizes that "Scratch FX" products have been helping lotteries grow sales for more than 10 years. It further touts that more than 500 "Scratch FX" games have been launched by 43 lotteries worldwide, earning over $10 billion in sales.

## COUNT I – INFRINGEMENT OF THE '494 PATENT

39. Nanografix re-alleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 38, above.

40. Pollard has infringed and continues to infringe, directly, at least claims 1, 2, 3, 4, 5, 6, 8, 9 and 10 of the '494 Patent, either literally or under the doctrine of equivalents, by making, using, selling and offering for sale Accused Tickets in the United States.

41. Pollard's infringement of the '494 Patent has injured, and continues to injure, Nanografix.

42. Nanografix is entitled to recover damages adequate to compensate it for such infringement in an amount no less than a reasonable royalty under 35 U.S.C. § 284.

43. Nanografix has also suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law.

44. Nanografix will continue to be injured unless and until this Court enters an injunction prohibiting further infringement.

## REQUEST FOR RELIEF

WHEREFORE, Nanografix asks this Court to enter judgment against Pollard and its subsidiaries, affiliates, officers, directors, agents, servants, employees and all persons in active concert or participation with them, granting the following relief:

A. An award of damages adequate to compensate Nanografix for the infringement that has occurred, together with prejudgment interest from the dates infringement of the '494 Patent began;

B. An award to Nanografix of all remedies available under 35 U.S.C. §§ 284 and 285;

C. A permanent injunction under 35 U.S.C. § 283 prohibiting further infringement of the '494 Patent;

D. Such other relief as this Court or a jury may deem proper and just.

**JURY DEMAND**

Nanografix demands a trial under Federal Rule of Civil Procedure 38(b) by jury on all issues so triable.

**RESPECTFULLY SUBMITTED,**

By: /s/ Derek J. Meyer
**Attorneys for Plaintiff**

**LEONARDMEYER LLP**
Derek J. Meyer (State Bar No. 278346)
1800 Century Park East, Suite 1400
Los Angeles, CA 90067
Tel: (310) 220-0331
rmeyer@leonardmeyerllp.com

**LEONARDMEYER LLP**
John G. Bisbikis (*pro hac vice* application forthcoming)
Madelaine M. Thomas (*pro hac vice* application forthcoming*)*
120 North LaSalle Street, Suite 2000
Chicago, IL 60602
Tel: (312) 374-8084
jbisbikis@leonardmeyerllp.com
mthomas@leonardmeyerllp.com

COMPLAINT